UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.                                                    5:26-CR-0038 (GTS)

TECOY INGRAM,

                       Defendant.

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OFFICE OF THE U.S. ATTORNEY<br>FOR THE N.D.N.Y.<br>  Counsel for the Government<br>100 South Clinton Street, 9th Floor<br>Syracuse, NY 13261 | MATTHEW J. MCCROBIE, ESQ.<br>JEFFREY BROWN, ESQ.<br>Assistant United States Attorneys |
| CDH LAW, PLLC<br>  Counsel for Defendant<br>211 Tompkins Street<br>Syracuse, NY 13204 | NICOLAS HURTADO CORTES, ESQ. |

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this criminal proceeding against Tecoy Ingram

("Defendant"), is Defendant's motion to suppress evidence pursuant to Fed. R. Crim. P.

12(b)(3)(C).  (Dkt. No. 16.)  For the reasons set forth below, Defendant's motion is denied.

## I.     RELEVANT BACKGROUND

### A.     Relevant Procedural History

For the sake of brevity, the Court will not recite in detail the events giving rise to the

criminal charge against Defendant, the nature of that charge, and the pre-motion procedural

history of this action, because this Decision and Order is intended primarily for the review of the

parties, who have demonstrated an adequate understanding of those facts.

**B.      Parties' Arguments on Defendant's Motion to Suppress**

**1.      Defendant's Memorandum of Law**

Generally, in his motion to suppress, Defendant makes three arguments.   (Dkt. No. 16, Attach. 1.)   First, Defendant argues that Probation lacked the required reasonable suspicion to conduct a warrantless search of his house, because an initial non-search walk-through of the house and a consent search of a BMW owned by Defendant produced no evidence or suspicion of a violation of the conditions of supervised release or unlawful activity, and Defendant's criminal history and a few statements that Probation believed were inconsistent (but which Defendant had explained to them before the search took place) were insufficient to constitute reasonable suspicion.   (*Id.* at 6-8.)

Second, Defendant argues that the fact that Probation first conducted a "home visit" walk-through of the house (which did not uncover any evidence of contraband or violations of his conditions of supervised release) and then returned for a second, more invasive search without any intervening cause for suspicion shows that the search violated the Fourth Amendment for the same reasons as those found in *United States v. Trzaska*, 886 F. Supp. 98 (E.D.N.Y. 1994).   (*Id.* at 8-10.)

Third, Defendant argues that a factual dispute regarding whether Probation conducted a "home visit" walk-through before an investigation into one of the cars in the home's driveway cannot be resolved on the material presented and therefore an evidentiary hearing is warranted. (*Id.* at 9-10.)

**2.      Government's Opposition Memorandum of Law**

Generally, in its opposition, the Government makes three arguments.   (Dkt. No. 19.) First, the Government argues that the search was both supported by reasonable suspicion and was reasonable under the Special Needs doctrine.   (*Id.* at 8-12.)   Specifically, the Government argues that reasonable suspicion existed based on the following combination of factors: (a) it was known to Probation that Defendant had a history of being both a drug user and involved in drug trafficking; (b) Defendant had violated the conditions of supervised release in the past by possessing and/or selling drugs and had failed to appear for required drug tests on two occasions, one of which occurred less than three weeks before the search; (c) during the relevant home visit on March 21, 2024, Defendant initially lied about owning a BMW that probation officers saw in the driveway of his home, but then admitted he did, in fact, own that vehicle and had owned it for months despite informing Probation only a month before that he did not own a vehicle; (d) the BMW was registered and insured in Defendant's father's name despite Defendant's admission that he himself was the owner; and (e) Defendant stated that the BMW was purchased from Florida and shipped to New York.   (*Id.*)   The Government further argues that the search was not arbitrary, capricious, or harassing but instead was reasonably related to the probation officers' duty to ensure Defendant was complying with the conditions of his supervised release and not committing additional crimes.   (*Id.*)   Finally, the Government additionally argues that the *Trzaska* case relied upon by Defendant does not compel any finding that reasonable suspicion was not present here, because that case relied upon law that predated many more recent developments applicable to searches of individuals subject to conditions of supervised release and is factually distinguishable.   (*Id.*)

Second, the Government argues that suppression of evidence is not warranted in this case

because the probation officers acted reasonably and in good faith when conducting the search and they could not have known at the time that the search they conducted was unconstitutional if the Court finds in hindsight that reasonable suspicion was lacking.   (*Id.* at 12-14.)

Third, the Government argues that an evidentiary hearing is not required because Defendant has failed to demonstrate any contested issue of material fact in that there is (and can be) no argument that he was not subject to a search condition as part of his conditions of supervised release and he has not contested other relevant facts material to the assessment of whether reasonable suspicion existed to execute the search.   (*Id.* at 14-15.)

### 3.    Defendant's Reply Memorandum of Law

Generally, in his reply memorandum of law, Defendant makes three arguments.   (Dkt. No. 20.)   First, Defendant argues that the search was not supported by reasonable suspicion because (a) his criminal status is not a sufficient basis for reasonable suspicion, standing alone, and in any event is too remote to create particularized suspicion related to this specific search, (b) there is no unexplained wealth to create suspicion here related to the BMW given that Defendant did explain that he owned the car and that it was registered and licensed in his father's name, (c) the Government cannot rely upon the cash recovered in the search itself as unexplained wealth given that the cash was not known of before the search was conducted, and (d) there is no basis for the Government's extrapolation of an inference that Defendant may have travelled out of state in violation of his conditions of supervised release from his statement that the car was purchased from Florida and shipped to New York.   (*Id.* at 2-4.)

Second, Defendant argues that the good faith exception does not apply because the terms of the modified conditions of supervised release explicitly required reasonable suspicion before

any search could be conducted and, as was argued above, there was no reasonable suspicion here.  (*Id.* at 4-6.)

Third, Defendant argues that an evidentiary hearing is required because there is an unresolved issue of fact regarding whether a walk-through was conducted before the probation officers began an investigation of the BMW given that the Post Search Summary and petition for violation of supervised release do not suggest that any such walk-through occurred, while affidavits indicate that it did.  (*Id.* at 6-7.)

## II.    GOVERNING LEGAL STANDARDS

### A.    Standard Governing a Motion to Suppress

Generally, on a motion to suppress evidence, the defendant must identify with specificity the evidence that he believes should be suppressed, and to identify the specific bases for suppression.  *See United States v. Elliott*, 363 F. Supp.2d 439, 444 (N.D.N.Y. 2005) (Sharpe, J.) ("The moving party must specifically articulate the relief requested and must set forth a factual basis which, if proven true, would entitle the moving party to the relief requested."); *accord, United States v. Burnett*, 793 F. Supp.2d 530, 531 (N.D.N.Y. 2011) (Sharpe, J.).   Generally, "[i]n order to raise a factual issue concerning the validity of a seizure such that a hearing is required, the defendant must support his claim with an affidavit based on personal knowledge." *United States v. Ruggiero*, 824 F. Supp. 379, 393-94 (S.D.N.Y. 1993), *aff'd sub nom. United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995) (quoting *United States v. Vasta*, 649 F. Supp. 974, 986 [S.D.N.Y.1986]); *see also United States v. Gillette*, 383 F.2d 843, 848 (2d Cir.1967) ("The affidavit submitted for appellant is insufficient in that it does not, for example, allege personal knowledge on the part of appellant's attorney; accordingly, there was no factual issue to

be resolved and the denial of a hearing was correct.").[1]   In addition, of course, the factual issue must be material.   *See United States v. Viscioso*, 711 F. Supp. 740, 745 (S.D.N.Y.1989) ("[T]he defendant must show 'that disputed issues of material fact exist before an evidentiary hearing is required' . . . . The required showing must be made by an affidavit of someone with personal knowledge of the underlying facts.").

In considering a motion to suppress, "the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial."   *United States v. Raddatz*, 447 United States 667, 679 (1980) (citing *United States v. Matlock*, 415 U.S. 164, 172-74 [1974]; *Brinegar v. United States*, 338 U.S. 160, 172-74 [1949]; Fed. R. Evid. 104[a], 1101[d][1]). Similarly, "the Confrontation Clause does not attach to pretrial suppression hearings."   *United States v. Shaw*, 16-CR-0642, 2017 WL 1380598, at *7 (S.D.N.Y. Apr. 13, 2017).   Finally, the standard of proof at such a hearing is a preponderance of the evidence.   *See United States v. Miller*, 382 F. Supp.2d 350, 361 (N.D.N.Y. 2005) (Sharpe, J.) ("In Fourth and Fifth Amendment litigation … the standard of proof is … proof by a preponderance of the evidence.") (citing *United States v. Matlock*, 415 U.S. 164, 177 [1974]).

**B.      Standards Governing Searches of Individuals on Supervised Release**

"The Fourth Amendment protects 'against unreasonable searches and seizures.'"   *United States v. Oliveras*, 96 F.4th 298, 305 (2d Cir. 2024) (quoting U.S. Const. amend. IV).   "In determining whether a search is reasonable, courts must balance 'the degree to which [the

---

[1]      *See, e.g., United States v. Jenkins*, 11-CR-0602, 2012 WL 12952811, at *3 (N.D.N.Y. Aug. 24, 2012) (Suddaby, J.) ("[I]n addition to the Local Rules of Criminal Practice for this Court, courts in the Northern District of New York have made it clear that motions to suppress require a supporting affidavit that is based on personal knowledge. Here, Defendant's motion does not meet this requirement because his attorney's affirmation does not contain facts, which if true, would result in suppression of the evidence obtained from Defendant's devices.") (internal citations omitted).

search] intrudes upon an individual's privacy' with 'the degree to which it is needed for the promotion of legitimate governmental interests.'"   *Oliveras*, 96 F.4th at 305 (quoting *Samson v. California*, 547 U.S. 843, 848 [2006]).

"For an individual's expectation of privacy to be legitimate, he must have 'exhibited an actual (subjective) expectation of privacy' and the expectation must be 'one that society is prepared to recognize as reasonable.'"   *United States v. Reyes*, 283 F.3d 446, 457 (2d Cir. 2002) (quoting *United States v. Thomas*, 729 F.2d 120, 122 [2d Cir. 1984]).   Individuals who are subject to conditions of supervised release that permit searches by their very terms have a diminished expectation of privacy.   *Reyes*, 283 F.3d at 457-58; *accord United States v. Lewis*, 125 F.4th 69, 77 (2d Cir. 2025); *United States v. Balon*, 384 F.3d 38, 44 (2d Cir. 2004).   The Supreme Court has indicated that a search related to such individual "requires no more than reasonable suspicion."   *United States v. Knights*, 534 U.S. 112, 121 (2001) (assessing that question in the context of probation); *cf. United States v. Lawrence*, 139 F.4th 115, 125 (2d Cir. 2025) (noting that "[a] search condition that requires reasonable suspicion does not implicate a fundamental interest because 'an offender on supervised release has a diminished expectation of privacy that is inherent in the very term *supervised* release'") (quoting *Lewis*, 125 F.4th at 77) (alteration in original).   "A probation officer is responsible for ensuring that a convicted person serving a term of federal supervised release is not violating the conditions of his supervised release, which includes verifying whether the supervisee is dealing in drugs or committing other crimes."   *Reyes*, 283 F.3d at 463.

III.   **ANALYSIS**

After careful consideration of whether the relevant evidence in this case must be

suppressed, the Court answers this question in the negative for the reasons stated in the Government's opposition memorandum of law.   *See, supra,* Part I.B.2 of this Decision and Order.   To those reasons, the Court adds the following analysis (which is intended to supplement, and not supplant, the reasons stated by the Government).

As an initial matter, the Court finds that it is not necessary to hold an evidentiary hearing on this motion.   "'[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact *going to the validity of the search* are in question.'"   *In re Bombings of U.S. Embassies in East Africa*, 552 F.3d 157, 165 (2d Cir. 2008) (quoting *United States v. Watson*, 404 F.3d 163, 167 [2d Cir. 2005]) (emphasis added); *accord United States v. Lewis*, 62 F.4th 733, 741 (2d Cir. 2023).

Defendant's sole basis for arguing that a hearing is required relates to what he perceives to be a material factual inconsistency between affidavits produced here that state that probation officers conducted a walk-through of the house before going outside to question Defendant about a BMW in the driveway and to investigate that BMW, and the contemporaneous Post Search Summary that did not mention any walk-through prior to investigation into the car.   However, there is no factual question presented in that respect because Probation Officer Muldoon admits in his affidavit that a walk-through was conducted before the investigation of the BMW.   (Dkt. No. 19, Attach. 1 at ¶ 8.)   That the Post Search Summary did not mention that walk-through (which, as both parties agree, did not reveal any contraband in plain view) does not create a factual inconsistency or question to be resolved.   Further, even if it did, such fact is simply not *material* to the question of whether the evidence ultimately found should be suppressed.

Defendant does not argue that the initial walk-through violated the Fourth Amendment, and, again, no evidence was found during that walk-through.   (Dkt. No. 16, Attach. 1, at 7 [stating that "[t]he home visit was within Probation's authority and required no reasonable suspicion to begin, but it produced no contraband and no observation of any violation"].)   It was not until after the investigation into the BMW that the search uncovering the relevant evidence occurred. The only argument Defendant provides for why the initial walk-through is material relates to Defendant's reliance on *United States v. Trzaska*, 866 F. Supp. 98 (E.D.N.Y. 1994), but, as will be discussed below, *Trzaska* is not applicable to the circumstances presented here.   Because any potential issue of fact related to the occurrence of the first walk-through is therefore not material to the ultimate question of whether the relevant search violated the Fourth Amendment, such issue is insufficient to warrant an evidentiary hearing.

Turning to the merits of Defendant's motion, the parties agree that the relevant standard that needs to be met here to satisfy the Fourth Amendment and comply with the conditions of Defendant's supervised release is reasonable suspicion.   Contrary to Defendant's arguments, the circumstances surrounding the BMW could provide reasonable suspicion that his conditions of supervised release were violated.   Specifically, Plaintiff had denied owning a vehicle a month before this home visit, but then admitted during the home visit that he'd owned the BMW for some months.   Additionally, during the home visit Defendant initially denied that he owned the BMW and, despite the fact Defendant eventually admitted owning the vehicle, it was confirmed that the BMW was registered and insured in the name of his father.   These facts taken together provided reasonable suspicion that Defendant was attempting to hide assets from the probation officers and thus reasonable suspicion that he might have been trying to hide evidence of

criminal activity or violations of the terms of his conditions of supervised release.   Especially when considered in conjunction with the fact that Defendant stated the car was shipped to New York from Florida (an action that suggests a not-insignificant expenditure of funds in addition to the purchase of the BMW itself) and the fact that both his original conviction and previous violations of his conditions of supervised release related to being part of a conspiracy to distribute a controlled substance or possession and sale of controlled substances, there was reason for probation officers to suspect that Defendant might be involved in illegal income-generating activity.   Notably, although the car was shown to be registered and insured in the name of Defendant's father, there is no indication that Defendant ever told the probation officers that his father paid to either purchase or ship the BMW; he informed them only that he owned the vehicle despite the fact that his name was not on the registration and insurance documents.   The fact that Defendant explained his ownership of the BMW and that his father's name is on the relevant documents therefore does not eliminate any questions related to where the money might have come from to purchase the BMW, nor does it negate the fact that circumstances suggest an attempt to hide his ownership of the BMW.

The circumstances discussed above are also the reason that Defendant's reliance on *Trzaska* is unavailing.   Unlike in *Trzaska*, where the second search of the defendant's house was predicated by items noticed in plain sight by the parole officer during her first, non-search visit to the house (but that were not seized during that visit), here the search was based on reasonable suspicion that arose after the probation officers investigated the facts related to the BMW.[2]

---

[2]   Additionally, *Trzaska* is premised on points of law that have since been developed significantly by both the Supreme Court and the Second Circuit, and the Court must rely upon those more recent authoritative statements of law to guide its decision.   Further, a main basis for the conclusion reached in that case was the fact that the applicable regulations and terms of the defendant's conditions of release did not permit the probation officer to seize evidence without

Although Defendant argues that no suspicion of any potential violation was uncovered during that investigation, that argument is simply contradicted by the information provided on this motion.   Because probation officers had reasonable suspicion to conduct the relevant search consistent with the terms of Defendant's conditions of supervised release, the fact that they conducted a home visit walk-through before conducting a later search of the house does not somehow render the search unconstitutional merely because the same "pattern" was present in *Trzaska*.

For all of these reasons, the Court finds that, because the probation officers had reasonable suspicion to conduct the search following their investigation into the BMW, there has been no showing of a Fourth Amendment violation and therefore no basis to suppress the evidence recovered as a result of that search.[3]

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to suppress (Dkt. No. 16) is **DENIED**.

Dated: July 29, 2026
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

---

defendant's consent.   Here, by contrast, it is undisputed (and corroborated by the Court's own docket) that, on March 21, 2024, Defendant signed a waiver form that permitted the modification of his Conditions of Supervision to require him to submit to search at any time when the Probation Office has reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct.   (Dkt. No. 29 of No. 11-CR-0014.)   Defendant notably acknowledges that the Court approved this modification the same day the search was conducted, which Parole Officer Muldoon specifies occurred before the relevant search of the house.

[3]    Additionally, because the Court has found that reasonable suspicion was present, it need not consider whether the probation officers' actions are covered by the good faith exception or whether the Special Needs doctrine would justify the search.   *See United States v. Knights,* 534 U.S. 112, 117-18 (2001) (noting that the Supreme Court in *Griffin v. Wisconsin*, 483 U.S. 868 [1987] indicated that the Special Needs analysis and the Fourth Amendment reasonable suspicion analysis were alternative means of determining whether a search was constitutional).   In any event, if it were to do so, the Court would find that those actions are so covered.